UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH EDWARD MAYS,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>            Defendant. | CASE NO. 14-cv-05652 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

    This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States Magistrate Judge, Dkt. 4). This matter has been fully briefed (*see* Dkt. 11, 12, 13).

    After considering and reviewing the record, the Court concludes that the ALJ failed to provide specific and legitimate reasons that are supported by substantial

evidence in the record for her failure to credit fully opinions from an examining psychologist.

Because this error is not harmless, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this opinion

## BACKGROUND

Plaintiff, KENNETH EDWARD MAYS, was born in 1986 and was 7 years old on the alleged date of disability onset of June 2, 1993 (*see* AR. 168-74). Plaintiff attended school to the tenth grade and has obtained his GED (AR. 37-38). He has had only two jobs, both in landscaping, and he was terminated from both of these jobs (AR. 41-42).

According to the ALJ, plaintiff has at least the severe impairments of "spina bifida, schizoaffective disorder, methamphetamine abuse in current remission, and learning disorder by history (20 CFR 416.920(c))" (AR 13).

At the time of the hearing, plaintiff was living with his parents, brother, and daughter in his parents' home (AR. 34).

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1383(c)(3) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* AR. 65-77, 79-93, 101-04). Plaintiff's requested hearing was held before Administrative Law Judge Joanne E. Dantonio ("the ALJ") on October 22, 2012 (*see* AR. 29-63). On January 18, 2013, the ALJ issued a written decision in

which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 8-28).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ erred in rejecting the medical opinions of Bruce A. Eather, Ph.D.; and (2) Whether or not the ALJ's errors were harmless (*see* Dkt. 11, p. 1).

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

### DISCUSSION

**(1)  Whether or not the ALJ erred in rejecting the medical opinions of examining psychologist, Bruce A. Eather, Ph.D.**

Dr. Bruce A. Eather, Ph.D. examined plaintiff and conducted a mental status examination ("MSE") (*see* AR. 556-67). He indicated that while plaintiff is able to complete routine tasks, "he would likely have some difficulty [doing] so in a typical work setting currently given his depression and chronic low back pain which would diminish his attention, concentration, persistence, task performance, and stress tolerance" (AR. 558). Plaintiff contends that the ALJ erred when he rejected the opinion of Dr. Eather "on the singular basis that '[t]his portion of the assessment delves into medical and physical

issues that are outside Dr. Eather's expertise, which lies in the psychological arena'" (*see* Opening Brief, Dkt. 11, p. 3 (*quoting* AR. 21)).

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Here, for the reasons discussed, the Court concludes that the ALJ failed to abide by this standard.

First, although defendant contends that Dr. Eather's opinion is speculative and not significant and probative because he used the word "likely," this argument is without merit (*see* Response, Dkt. 12, p. 6). Doctors routinely provide opinions regarding what is likely, or on a more likely than not basis, which does not render their opinion speculative and irrelevant. *See, e.g.*, *Stone v. Astrue*, 303 Fed. Appx. 394, 395 (9th Cir. 2008) ("many of the doctors who examined Stone, including Dr. Redfern himself, observed that Stone's symptoms were likely related to psychological issues") (unpublished memorandum opinion); *Schmidt v. Astrue,* 173 Soc. Sec. Rep. Srvc. 795, 2012 U.S. Dist. LEXIS 2207 at *30 (N.D. Iowa 2012) ("it is clear that all of her doctors agreed that her hospitalization was more likely than not related to her underlying liver condition") (citations to record omitted). In addition, this was not a reason relied on by the ALJ and according to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."

ORDER ON PLAINTIFF'S COMPLAINT - 4

*Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)).

Although Dr. Eather's opinion that plaintiff can perform routine tasks clearly is modified by Dr. Eather's opinion that plaintiff likely would have some difficulty doing so in a typical work setting due to diminishment of his attention, concentration, persistence, task performance and stress tolerance, defendant provides a tortured interpretation of Dr. Eather's opinion, arguing that his opinion regarding diminishment "did not change" the conclusion regarding performing routine tasks (*see* Dkt. 12, p. 6). It is clear from the record that according to Dr. Eather, plaintiff's ability to complete routine tasks is limited by his "difficulty [doing] so in a typical work setting currently given his depression and chronic low back pain which would diminish his attention, concentration, persistence, task performance, and stress tolerance" (AR. 558). This argument also is without merit.

Defendant provides no rationale in support of the only actual reason given by the ALJ for his failure to credit fully this opinion from Dr. Eather. *See Bray, supra*, 554 F.3d at 1225-26 (*citing Chenery Corp.*, *surpa*, 332 U.S. at 196 (other citation omitted). The ALJ failed to credit fully Dr. Eather's opinion regarding plaintiff's difficulty performing routine tasks in a typical work setting due to "his depression and chronic low back pain which would diminish his attention, concentration, persistence, task performance, and stress tolerance" with a finding that this opinion "delves into medical and physical issues that are outside Dr. Eather's expertise, which lies in the psychological arena" (AR. 21).

The fact that Dr. Eather based his opinion in part on plaintiff's pain, in addition to his depression, is not a legitimate reason to discredit fully this opinion. *See Mills v.*

*Astrue*, 2009 WL 586111, 2009 U.S. Dist. LEXIS 22660 at *12, Docket No. C08-1319CRD (W.D. Wash. March 5, 2009) ("dismissal of the examining psychologist's opinion regarding a patient's mental health impairments because they are partially attributable to physical impairments is not legitimate reasoning") (unpublished opinion). Dr. Eather's opinion regarding limitations is related to plaintiff difficulties in a typical work setting due to diminished "attention, concentration, persistence, task performance, and stress performance" (AR. 558). These limitations are fully within Dr. Eather's area of expertise. Also, as quoted by plaintiff, according to a relevant federal regulation, if there is "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process . . . ." (Dkt. 11, pp. 3-4 (*quoting* 20 C.F.R. § 416.923)); *see also* SSR 96-8. Finally, the Court notes that this opinion by Dr. Eather is substantiated by the objective evidence of Dr. Eather's observations following the MSE. For example, Dr. Eather indicated that he personally observed plaintiff's "[d]iminished concentration, energy, and interest for work tasks and social interaction" (*see* AR. 557). The ALJ has not explained why her interpretation of Dr. Eather's observations and MSE results are more correct than Dr. Eather's interpretation.

    The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination ["MSE"] allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3

(Oxford University Press 1993). "Like the physical examination, the [MSE] is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The [MSE] generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports. *See id.* at 4; *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (internal citations omitted)). The Court concludes that the ALJ erred by failing to do so here.

**(2)    Whether or not the ALJ's errors were not harmless.**

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The court noted multiple instances of the application of these principles. *Id.* (collecting cases). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). Courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Here, the ALJ erred in evaluating Dr. Eather's opinion, including the opinion that while plaintiff is able to complete routine tasks, "he would likely have some difficulty [doing] so in a typical work setting currently given his depression and chronic low back pain which would diminish his attention, concentration, persistence, task performance, and stress tolerance" (AR. 558). This opinion is not included in plaintiff's residual functional capacity ("RFC"), and was not included in the hypothetical to the vocational expert ("VE"), on whose opinion the ALJ relied when making her ultimate determination regarding non-disability (*see* AR. 17, 23-24). Had the ALJ included this improperly

1  rejected opinion into plaintiff's RFC, and into the hypothetical given to the VE, the

2  ultimate non-disability determination may have been different. Therefore, the error is not

3  harmless. *See Molina, supra*, 674 F.3d at 1115.

4  CONCLUSION

5  Based on the stated reasons and the relevant record, the Court **ORDERS** that this

6  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

7  405(g) to the Acting Commissioner for further consideration consistent with this opinion.

8  **JUDGMENT** should be for plaintiff and the case should be closed.

9  Dated this 27th day of January, 2015.

_____

J. Richard Creatura
United States Magistrate Judge